**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

ROMA O. AMOR,                    )
                                 )
    Plaintiff,               )
                                 )          No. CIV 06-499-TUC-CKJ
vs.                              )
                                 )          **ORDER**
                                 )
STATE OF ARIZONA, et al.,        )
                                 )
    Defendants.              )
                                 )
_____  )

       Plaintiff Roma A. Amor has filed a proposed Second Amended Complaint and a proposed Third Amended Complaint. Pending before the Court are Amor's Motion to Seal Second Amended Complaint [Doc. # 124], Motion to Extend Page Limitations [Doc. # 125], Motion for Clarification Sealed Service [Doc. # 127], Motion for Leave of Court to File Third Amended Complaint [Doc. # 129], Motion for Temporary Seal of Third Amended Complaint [Doc. # 131], Motion for Clarification and for Extension of Time to Serve Amended Complaint [Doc. # 136], and Motion for Clarification & Stay [Doc. # 139]. Additionally, Defendant Dodds has filed a Notice of Non-Service and Motion to Extend Deadlines [Doc. # 132][1] and dismissed Defendant Plevell has lodged a proposed judgment [Doc. # 138].[2]

_____

    [1]Defendant Coughlin has filed a Joinder to this Notice and Motion.

    [2]The Court will address the lodged judgment in a separate order.

I. *Procedural Background*

On March 27, 2007, this Court issued an Order screening the Complaint filed by Roma A. Amor ("Amor"). Amor was granted leave to proceed *in forma pauperis* and the Complaint was dismissed without prejudice with leave to amend. An additional Order directing Amor to file an Amended Complaint was filed on December 28, 2007, as modified on February 14, 2008. On June 16, 2008, Amor submitted a Second Amended Complaint and, on July 7, 2008, Amor submitted a Third Amended Complaint ("TAC").

II. *Screening Order*

This Court is required to dismiss a case if the Court determines that the allegation of poverty is untrue, 28 U.S.C. § 1915(e)(2)(A), or if the Court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 § 1915(e)(2)(B). The Court found, in its December 2, 2007, Order that it is appropriate for the Court to determine whether an Amended Complaint "fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii).

III. *Motion for Leave of Court to File Third Amended Complaint*

The Court having not yet screened Amor's Second Amended Complaint, the Court will accept Amor's TAC and screen the TAC herein.[3]

IV. *Fed.R.Civ.P. 8(a)*

Amor was previously advised that a complaint is to contain a "*short* and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. (8)(a)(2) (emphasis added). A complaint must set forth a set of facts that serves to put defendants on

_____

[3]Amor has also filed a Motion to Extend Page Limitations as to the Second Amended Complaint. This motion will be denied as moot.

notice as to the nature and basis of the claim(s). Failure to set forth claims in such a manner places the onus on the court to decipher which, if any, facts support which claims, as well as to determine whether Amor is entitled to the relief sought. *Haynes v. Anderson & Strudwick, Inc.*, 508 F.Supp. 1303 (D.C.Va. 1981).

Amor's TAC attempts to set forth facts in a shorter and plainer statement than previously submitted, but again includes conclusory allegations. The commingling of facts and claims have placed the onus on the Court to decipher which, if any, facts support which claims. Such allegations do not provide fair notice to Defendants as to Amor's claims and the grounds upon which they rest. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993).

However, *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519 (1972). Nonetheless, the Court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). A review of the TAC indicates that, for some claims, Amor has alleged "enough facts to state a claim to relief that is plausible on its facts." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).[4]

V. *Count I – Wrongful Seizure/Removal*

Amor asserts that Dr. Ronald A. Goodsite ("Goodsite"), all City Defendants, including Tucson Police Department ("TPD") Officer Jeffrey Baker ("Baker") and TPD Officer Craig

---

[4]The holding in *Twombly* explicitly abrogates the well established holding in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1964-65. Indeed, Fed.R.Civ.P. 8(a)(2) requires a showing that a plaintiff is entitled to relief "rather than a blanket assertion" of entitlement to relief. *Id.* at 1965 n. 3. The complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right to action." *Id.* at 1965.

- 3 -

Wells ("Wells"), State of Arizona Department of Economic Security ("DES"), DCYF Supervisor Lillian Downing ("Downing"), DES-DCYF Deputy Director Mary Lou Hanley ("Hanley"), DCYF-CPS Agent Corie M. Adams ("Adams"), DCYF-CPS Agent Jill Pike ("Pike"), and DCYF-CPS Agent Olivia R. Sifuentes ("Sifuentes") violated her First, Fourth, Ninth and Fourteenth Amendment rights, her right to privacy under the Arizona Constitution, Art. 2, § 8, and A.R.S. § 41-1401 by the wrongful seizure and removal of her child.[5]

Specifically, Amor asserts that, on September 15, 2005, Goodsite contacted DES/CPS which resulted in the seizure of her child.[6] Amor asserts that Goodsite acted under the color of law under mandatory reporter statutes. Later that evening, Sifuentes, at the direction of Adams and Pike, appeared with Baker and Wells to seize Amor's child. Amor alleges that the seizure of the child was without notice of investigation, without investigating circumstances, without consideration of less extreme measure, and with no finding of non-accidental trauma and lacking imminent danger. Further, no temporary custody order had been issued by the juvenile court.

Amor alleges that Baker did not report any suspicion of non-accidental trauma or abuse to show probable cause or imminent danger to seize the child to avert an injury. Amor asserts that while Sifuentes was advising Amor to contact Adams, advising Amor that the child should be returned before the weekend, and Amor was engaging in her and the child's evening prayer, Baker ripped the child from her arms with callous deliberate indifference to the child's tender years and injuries (including stitches).

Initially, the Court considers these claims against Goodsite. Amor is alleging that Goodsite was a state actor. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct.

---

[5]Amor's claim under the First Amendment will be considered in section X. Additionally, the Ninth Amendment is a rule of construction, not a substantive basis for a civil rights claim. *Rynn v. Jaffe*, 457 F.Supp.2d 22 (D.D.C. 2006); *Clynch v. Chapman*, 285 F.Supp.2d 213 (D.Conn. 2003). The Court finds Amor has not stated a Ninth Amendment claim upon which relief can be granted in Count I.

[6]Amor appears to be alleging that the child had suffered an accidental injury on City of Tucson playground equipment which resulted in the visit to the doctor.

2744, 73 L.Ed.2d 482 (1982).  However, the Ninth Circuit has consistently determined that private hospitals and doctors in § 1983 claims fail to come within the color of state law.  *See Briley v. State of Cal.*, 564 F.2d 849, 855-56 (9th Cir. 1977) (private hospitals not acting under color of state law unless the state is significantly involved in the private party's activities); *Watkins v. Mercy Med. Center*, 520 F.2d 894, 896 (9th Cir. 1975); *see Polk County v. Dodson*, 454 U.S. 312, 319 n. 9, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (private attorneys do not act under color of state law).  Other courts have similarly held. *Brown v. Newberger*, 291 F.3d 81, 93 (1st Cir. 2002) (complying with mandatory reporting statute does not justify finding defendant was a state actor); *Preston v. New York*, 223 F.Supp.2d 452, 466 (S.D.N.Y. 2002) (private actors do not become state actors simply by complying with legal duty to report suspected child abuse).  The Court finds Goodsite was not a state actor and, therefore, the federal civil rights claims cannot be maintained against him.

Similarly, Ariz.Const. Art. 2, § 8 "was not intended to give rise to a private cause of action between private individuals[.]"  *Cluff v. Farmers Ins. Exchange*, 10 Ariz. 560, 563, 460 P.2d 666, 669 (1969), *overruled on other grounds*.  The Court having found that Goodsite is not a state actor, the Court finds Amor has failed to state a claim against Goodsite under Ariz.Const. Art. 2, § 8.  However, Arizona does recognize a cause of action between private individuals for the tort of invasion of privacy.  *Id*.; *see also Martinez v. Green*, 212 Ariz. 320, 131 P.3d 492 (App. 2006) (invasion of privacy is a tort claim).  Nonetheless, Amor has not alleged that Goodsite communicated any information "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  Restatement 2d of Torts, § 652D, comment a.; *see also Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 783 P.2d 781 (1989) (recognizing tort as set forth in Restatement); Restatement 2d of Torts, § 652E (incorporating § 652D).  The Court finds Amor has failed to state a claim for invasion of privacy false light on which relief can be granted against Goodsite.

- 5 -

As to Amor's Fourth Amendment and Fourteenth Amendment claims against the government actors, the Ninth Circuit Court of Appeals has stated:

> Government officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes 'reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.'"

*Mabe v. San Bernardino County Dept. of Public Social Services*, 237 F.3d 1101, 1106 (9th Cir. 2001), citation omitted. The "same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for the removal of children[.]" *Wallis ex rel. Wallis v. Spencer*, 202 F.3d 1126, 1137 n. 8 (9th Cir. 2000). The Court finds Amor has stated a Fourth Amendment and Fourteenth Amendment claim based on the removal of the child against Baker, Wells, and Sifuentes. Furthermore, Amor has stated a claim for supervisor liability against Adams and Pike. *See Hydrick v. Hunter*, 500 F.3d 987, 988 (9th Cir. 2007), *citation omitted* (supervisor is only liable for the constitutional violations of subordinates "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them").

As to Amor's claims against the remaining government Defendants, Amor has not alleged that those individuals personally participated in the constitutional deprivation, or that they were aware of widespread abuses, and with deliberate indifference to the person's constitutional rights, failed to take action to prevent further misconduct. *See King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987); *see also, Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). The Court finds Amor has failed to state a Fourth Amendment or Fourteenth Amendment claim based on the removal of the child against the other government officials.

The Arizona Constitution does not provide less protection than does the Fourth Amendment. *See Petersen v. City of Mesa*, 207 Ariz. 35, 37 n. 3, 83 P.3d 35, 37 n. 3 (2004), citing Ariz.Const. Art. 2, § 8. The Court finds, therefore, that Amor has stated an Ariz.Const. At. 2, § 8 claim against Baker, Wells, Sifuentes, Adams, and Pike.

Amor also asserts a claim under A.R.S. § 41-1401. However, that statute establishes a "civil rights division within the department of law which shall include the Arizona civil rights advisory board." The statute, itself, does not provide a basis for a cause of action. The Court finds Amor has failed to state a claim based on A.R.S. § 41-1401.

VI. *Count II – Excessive Force and Coercion*

Amor alleges that all City Defendants, including Baker and Wells, DES, Adams, Pike, and Sifuentes used excessive force and coercion. Specifically, she alleges that Sifuentes, at the direction of Adams and Pike, unreasonably and using unnecessary psychological coercion and force by appearing with Baker and Wells to seize the child without notice, investigation, no finding of accidental trauma or imminent danger, and without consideration of less extreme measures. Further, Amor alleges that Baker ripped the chid from her arms with callous deliberate indifference to the child's tender years and injuries (including stitches).

"The Fourth Amendment requires police officers making [a seizure] to use only an amount of force that is objectively reasonable in light of the circumstances facing them." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007). In determining whether the use of force was reasonable, "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake" are to be balanced. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), *internal quotation marks omitted*. Relevant factors in this inquiry include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Accepting the allegations contained in the TAC as true, Amor did not present an immediate threat to the officers, Amor was not attempting to evade the removal of the child, and Baker acted without concern for the child's injuries. The Court finds Amor has stated a Fourth Amendment claim against Baker for unreasonable force. However, the Court finds Amor's allegations of psychological coercion and force fail to state a claim against any other

government actors.  The Court finds Amor has failed to state a Fourth Amendment claim for unreasonable force against any other government actor.

VII. *Count III – Medical Malpractice*

Amor alleges that Goodsite injured the child and then either he or his staff had repeated conversations with CPS to arrange for the seizure of the child.  Amor further alleges that Goodsite did not timely provide her with a referral for an MRI for the child.

A medical malpractice claim requires an allegation that Goodsite owed a duty, there was a breach of that duty, and damages related to the breach of the duty.  *Smethers v. Campion*, 210 Ariz. 167, 108 P.3d 946 (App. 2005); *see also* A.R.S. § 12-563.  Here, Amor alleges that when the child was receiving medical care from Goodsite, Goodsite cut the child.  The Court finds Amor has stated a medical malpractice claim for this injury on which relief can be granted.  Amor further alleges that Goodsite did not timely provide a referral for a test for the child.  Amor does not allege any damages (e.g., the results of the test indicated treatment that could have been provided earlier) as to this claim.  The Court finds Amor has not stated a medical malpractice claim on which relief can be granted as to this allegation.

VIII. *Count IV – False and Malicious Reporting*

Amor alleges Goodsite and/or his employees had repeated conversations with CPS to arrange for the seizure of the child.  A.R.S.§ 13-3620.J. provides that a person who furnishes a report as required by statute "is immune from any civil or criminal liability by reason of that action unless the person acted with malice or unless the person has been charged with or is suspected of abusing or neglecting the child or children in question."  In this case, Amor alleges that Goodsite made a report and abused the child (i.e., unnecessarily cutting the child).

It is not clear if a civil action for false and malicious reporting is available in Arizona.  *See e.g. Begier v. Strom*, 46 Cal.App.4th 877, 54 Cal.Rptr. 158 (1996) (Legislature has declared person who makes false report of child abuse is liable for damages).  The Arizona

Legislature has not provided that persons making false reports of child abuse are liable for damages.[7] Moreover, the Court has not found any case that authorizes such an action. However, A.R.S. § 13-3620(A) requires specified "person[s] who reasonably believes that a minor is or has been the victim of physical injury, abuse, [or child] abuse . . . ." to report the information to CPS or a peace officer. A person includes "[a]ny physician . . . who develops the reasonable belief in the course of treating a patient." A.R.S. § 13-3620(A)(1). That reporting person "is immune from any civil or criminal liability by reason of that action unless the person acted with malice or unless the person has been charged with or is suspected of abusing or neglecting the child or children in question." A.R.S. § 13-3620(J). The Court notes that the statute does not make clear what constitutes an adequate "suspicion." The Arizona Legislature's discussion of immunity implies that such an action is viable in Arizona. The Court finds Amor has stated a claim against Goodsite.

IX. *Count V – Substantive Due Process*

Amor asserts that all City Defendants, all State Defendants, the County of Pima by and through its Superior Courts, Officers, and Indigent Defense Services violated her Fourteenth Amendment right to substantive due process. Amor also asserts a violation of the Arizona Constitution, Art. 2, § 4, 42 U.S.C. § 1983, and A.R.S. § 41-1401.[8]

---

[7]The Arizona Legislature has provided that a "person acting with malice who knowingly and intentionally makes a false report . . ." is guilty of a misdemeanor. A.R.S. § 13-3620.01(A).

[8]The Court notes that 42 U.S.C. § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). To state a claim under § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution and laws of the United States and (2) the alleged deprivation was committed by a person action under color of state law. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Additionally, as previously stated, A.R.S. § 41-1401 does not provide Amor with a cause of action.

As previously stated, the "same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for the removal of children[.]" *Wallis ex rel. Wallis v. Spencer*, 202 F.3d 1126, 1137 n. 8 (9th Cir. 2000). For the reasons set forth in the discussion in section V of this Order, the Court finds Amor has stated a substantive due process claim under the Fourteenth Amendment and under the Arizona Constitution based on the removal of the child against Baker, Wells, Sifuentes, Adams, and Pike but finds that Amor has failed to state a claim against the other government officials.[9]

X. *Count VI - Deprivation of Familial Association*

Amor asserts that all City Defendants, all State Defendants, the County of Pima by and through its Superior Courts, Officers, and Indigent Defense Services deprived her of familial association without due process of law in violation of the First, Ninth, and Fourteenth Amendments. Specifically, Amor alleges that, on September 15, 2005, Sifuentes, at the direction of Adams and Pike, appeared with Baker and Wells to seize Amor's child. Amor alleges that the seizure of the child was without notice of investigation, without investigating circumstances, without consideration of less extreme measure, and with no finding of non-accidental trauma and lacking imminent danger. Further, no temporary custody order had been issued by the juvenile court.

Amor alleges that, on September 16, 2005, Adams and Pike informed her that the child would not be returned as Amor was unable to protect him from Eric P. Dodds ("Dodds"). Amor asserts that she did not live with Dodds, Dodds lived in Pennsylvania, and that she presented to Adams and Pike a contract lodged in the Pima County Superior Court to protect the child from Dodds. Amor asserts that Adams and Pike's decision of imminent danger was unsubstantiated and was a deceitful, malicious act to withhold Amor's child.

---

[9]The Court notes that many of Amor's allegations as to this claim are more appropriately relevant to her claim of procedural due process violations.

Amor also asserts that Adams and Pike encouraged and recommended the transfer of this child over state lines to Dodds without proper procedure and interfering with the contract lodged in the Superior Court. Additionally, Amor asserts this was done in violation of an interstate compact and the substantive due process clause of the Fourteenth Amendment. Amor asserts that Adams and Pike withheld her child in an undisclosed location for nearly three months where he was neglected and abused, which constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments and her inalienable right to care for and protect her child. Amor also asserts a dependency petition was not filed within 72 hours and the child was not returned within 72 hours. Therefore, Amor asserts, state law requirements of providing her with documentation to support a dependency petition was not provided to her. Amor further asserts that she was not provided an opportunity to cross-examine Adams and Pike. Amor asserts that, thereafter, she was twice not provided notice of the Preliminary Protective Hearing ("PPH"). Amor also asserts that insufficient evidence was presented to show there was probable cause to believe continued custody of the child was clearly necessary pursuant to A.R.S. § 8-824(F), and, therefore, the child should have been returned. A.R.S. § 8-825(C)(1). Amor asserts that the juvenile court improperly considered hearsay of the Christ Church of United Methodist Preschool ("the Preschool") and Goodsite contained within a report that was deliberately concealed from her. Amor asserts that statements made by the Preschool, Goodsite, Adams, and Pike were false and misleading, intended to deceive or misrepresent and harass, and were known to be untrue.[10] Amor asserts that the report is unavailable to her and State Defendants and the Pima County Superior Court employees did not properly store the records. Amor also asserts that Adams, Pike and DCYF-CPS Agent Emmanuel Vergara (Vergara") failed to provide information to the juvenile court which would have refuted allegations against Amor.

---

[10]Amor asserts that the deceit was, in part, to conceal the child abuse and neglect of the Preschool.

Amor also asserts that Adams, Pike, and Vergara did not provide her with notice for Foster Care Review Board ("FCRB") hearings. Further, Amor asserts that the case plan given to her at the PPH recommended unsupervised visitation twice a day for one hour. Adams opposed the unsupervised visits.

Amor asserts that DES, Adams, Pike, Vergara, Assistant Attorney General Laurie Beaver San Angelo ("Beaver San Angelo") and non-defendant Turner ("Turner") through the Pima County Courts conspired to apply the law in a discriminatory manner to provide Dodds, Gerald C. Dodds ("G. Dodds"), Julia Dodds ("J. Dodds"), non-defendant Foley ("Foley") and others unsupervised visitation and out-of-state travel. Amor asserts this violated her right to exercise parental authority as to who should receive visitation, considering who might post a safety risk to the child.

Amor asserts that DES, by and through Beaver San Angelo, Turner, Adams, Pike, Vergara, and Bailey, conspired with Dodds, by and through non-defendant Sanders ("Sanders"), Foley, and John C. Gilmore ("Gilmore"), G. Dodds, State of Pennsylvania agencies, County of York agencies to file an application under the Interstate Compact on the Placement of Children ("ICPC") to send the child over state lines. An expedited ICPC application was requested by Dodds, through Sanders, Foley and Turner and granted by the juvenile court judge. Amor did not receive notice of the order until over one month later in November 2005, when the Superior Court contract was consolidated with the juvenile proceeding – Amor asserts the child was not adjudicated dependent nor was there an open case to consolidate. Amor argues that the ICPC Reg. 303 provides that the legal right to care for the child must be established prior to the initiation an ICPC application and that those rights cannot have been voluntarily terminated or diminished by order of a court. Amor asserts that the Pima County Superior Court contract relinquished Dodds' rights to plan or care for the child – Amor asserts that the contract was approved. Amor asserts the safety stipulations of the contract were partially the result of previous York County Children and Youth proceedings because of domestic violence involving Dodds.

Amor asserts DES granted permission for the child to travel anywhere in the United Stated prior to any hearing and prior to any notice to Amor. Amor further alleges that Beaver San Angelo encouraged Judge Rubin to dismiss any and all safety precautions for the child by dismissing the Dodds case plan including domestic violence, anger management, parenting, divorce, and custody classes. By intentionally interfering with the contractual safety stipulations, Amor asserts officials in Arizona and Pennsylvania did not ensure the safety of the child and caused a state created danger, neglected fiduciary duties, and violated the ICPC. Amor asserts that out-of-state travel began before any dependency hearing and without a completed ICPC. Amor asserts that Beaver San Angelo urged Judge Rubin to release the child out-of-state despite the ICPC process not being completed. Further, there was no final custody order until October 2006, nine months after the child was forced to travel out-of-state – Amor asserts she was not provided an opportunity to be heard on the final order.

Amor also asserts that DES, Adams, Pike, Vergara, Beaver San Angelo and Turner, through the Pima County Courts, conspired to apply the law in a discriminatory manner to provide Dodds, G. Dodds, J. Dodds, Foley and others unsupervised access by encouraging them to file for unsupervised overnight visits and out-of-state travel.

As the Court previously advised Amor, a parent has a constitutionally protected liberty interest in the "companionship and society of their children". *Kelson v. City of Springfield*, 767 F.2d 651, 653-654 (9th Cir. 1985). Governmental interference with that interest may give rise to a section 1983 action due to the well established holding that "[t]he integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment." *Morrison v. Jones*, 607 F.2d 1269, 1275-76 (9th Cir. 1979) (citations omitted).[11] "[T]he First Amendment protects those relationships, including family

---

[11]The Court notes that the Ninth Amendment is a rule of construction, not a substantive basis for a civil rights claim. *Rynn v. Jaffe*, 457 F.Supp.2d 22 (D.D.C. 2006);

relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Board of Dir. v. Rotary Club*, 481 U.S. 537, 545 (1987) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 619-20 (1984). The standard applied under the Fourteenth Amendment applies to a claim under the First Amendment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 685-86 (9th Cir. 2001).

Amor's procedural due process claim as to the familial liberty interest is to be considered "by balancing tests, where differing interests can give rise to many differing procedural requirements." *Brittain v. Hansen*, 451 F.3d 982, 1000 (9th Cir. 2006). The seminal balancing test is outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Per *Mathews*, the Court is to look to: (i) the private interest that will be affected by the official action, (ii) the risk of an erroneous deprivation of that interest through the procedures used, (iii) the probable value, if any, of additional or substitute procedural safeguards, and, (iv) the Government's interest, including the economic and administrative burden the additional or substitute procedural requirement would entail. *Id* at 335. To allege a procedural due process claim, Amor must allege that there is a liberty interest protected by the Constitution, there has been a deprivation of the interest by the government, and a lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

In this case, Amor does not appear to be alleging that the procedures set forth in the ICPC or Arizona statutes do not provide adequate due process. Rather, Amor seems to be alleging that Arizona and Pennsylvania officials did not comply with those provisions. The Court finds Amor has stated a claim against Adams, Pike, and Vergara.

*Clynch v. Chapman*, 285 F.Supp.2d 213 (D.Conn. 2003)

Amor seeks to impose liability for constitutional torts on private persons Kasey Coughlin ("Coughlin"), Jacqueline Rohr ("Rohr"), and Gilmore.[12]   The conduct of these individuals cannot be said to be fairly treated as that of the State itself and their conduct was not that of traditional state actors.  *See also Miranda v. Clark County, Nevada*, 319 F.3d 465 (9th Cir. 2003) (even if employed by government agency, if attorney is engaged in traditional lawyer role, lawyer is not state actor for § 1983 purposes).  Moreover, the Pima County Superior Court, Indigent Defense Services, and Beaver San Angelo are entitled to absolute immunity.  *See e.g. Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996) (clerks of court had absolute quasi-judicial immunity from damages for civil rights violations when they performed tasks that were an integral part of the judicial process); *Imbler v. Pachtman*, 424 U.S. 409, 431 n. 34, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (concluding that not only prosecutor's role in allegedly suborning perjury but also prosecutor's "deliberate withholding of exculpatory information" were shielded by absolute immunity).

Amor also asserts that private persons Dodds, G. Dodds, and J. Dodds deprived her of familial association without procedural due process.  A private actor may be deemed to have engaged in state action for purposes of § 1983 under certain circumstances.  *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 954-55 (9th Cir. 2008).  Similarly, a private entity can, in certain circumstances be subject to liability under § 1983.  *Sutton v. Providence St. Joseph Medical Ctr.*, 192 F.3d 826, 835-36 (9th Cir. 1999).  The United States Supreme Court created a two step analysis for determining whether a private actor engaged in state action sufficient to establish liability for a constitutional tort.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).  The court must consider "whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority."  *Id*., 457 U.S. at 939.  The court must also consider "whether, under the facts of this case, . . . [the] private parties, may be appropriately characterized as 'state

---

[12]Coughlin and Rohr were appointed as counsel for Amor in the juvenile court proceedings and Gilmore represented Dodds in the juvenile court proceedings.

actors.'" *Id.* Subsequently, the Court found that the inquiry whether there was state action is a general one: "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001), *citation omitted*. Some of the factors to consider in determining whether there is a "close nexus" are (1) the organization is mostly comprised of state institutions; (2) state officials dominate decision making of the organization; (3) the organization's funds are largely generated by the state institutions; and (4) the organization is acting in lieu of a traditional state actor. *Id.*, 531 U.S. at 295-99.

Amor has alleged that Dodds and G. Dodds took actions to obtain visitations and out-of-state travel at the behest of state officials. However, Amor has not alleged any facts to support allegations that state officials dominated the decision making of Dodds or G. Dodds or that state officials provided any funds to support Dodds or G. Dodds' legal actions. Further, pursuing a custody order is not an action that is traditionally considered a state action. The Court finds that Amor has not alleged facts sufficient to state a claim against Dodds, G. Dodds, and J. Dodds as state actors.

XI. *County VII – Legal Malpractice and Misrepresentation*

Amor asserts a claim of legal malpractice against attorneys Coughlin and Rohr. The Court previously advised Amor that to state a claim for legal malpractice, Amor must allege "(1) the existence of an attorney-client relationship which imposes a duty on the attorney to exercise that degree of skill, care, and knowledge commonly exercised by members of the profession, (2) breach of that duty, (3) that such negligence was a proximate cause of resulting injury, and (4) the fact and the extent of the injury." *Philips v. Clancy*, 152 Ariz. 415, 418, 733 P.2d 300, 303 (Ariz.App. 1986). In effect, Amor is alleging that appointed counsel did not adequately pursue her interests both procedurally and substantively and, as

a result, she lost custody of her child. The Court finds Amor has stated a claim upon which relief may be granted.

Amor also asserts that Gilmore is liable for misrepresentation and fraud. However, a cause of action against an opposing attorney for statements made during litigation is strictly limited to actions alleging malicious prosecution, also known as wrongful institution of civil proceedings. *Linder v. Brwon & Herrick*, 189 Ariz. 398, 943 P.2d 758, 766 (1977) (dismissing claims of fraud and intentional infliction of emotional distress against opposing counsel for failure to state a claim); *see also Giles v. Hill Lewis Marce*, 195 Ariz. 358, 988 P.2d 143 (App. 1999) (immunity for actions in representing client does not extent to intentional torts of malicious prosecution and abuse of process). The Court finds Amor has failed to state a claim of misrepresentation or fraud upon which relief can be granted against Gilmore.

## XII. *Count VIII – Unequal Treatment, Retaliation, and Conspiracy*

Amor asserts that all State Defendants, all City Defendants, the County of Pima by and through its Superior Courts, Officers, and Indigent Defense Services, and Rohr deprived her of equal protection under the ADA, retaliated against her, and conspired against her. Amor alleges that Sifuentes called for police assistance at the time of removal because of Amor having mental issues. Amor further alleges that Adams and Pike provided false information to Dodds and Gilmore that Amor had failed to comply with a Pennsylvania order to complete a psychological evaluation to assist in determining whether she could safely care for the child. Amor also alleges that DES, Adams, Pike, Vergara, and Beaver San Angelo disobeyed a court order by failing to provide Amor with an evaluation and therapy (e.g., after submitting for testing, Amor was told in October 2005 by Adams that there were no concerns and no further evaluation or therapy was needed).

Amor also alleges that, from November 2005 through February 2006, she spoke out about the interference with her right to parent the child and the endangerment of the child as a result of the state action. Amor alleges that officials and others retaliated against her.

Specifically, Amor asserts that Adams, Vergara, Rohr, and Coughlin responded to her concerns with sneers, sarcasm, and threats of losing her child permanently. Amor further alleges that, on November 11, 2005,[13] Rohr threatened to have a guardian ad litem appointed if Amor did not sign full custody over to Dodds. Amor also asserts that, from October 2005 through February 2006, officials and others subjected her to harassment, stalking, and vandalism, including a blade in a tire which nearly caused her to miss a scheduled visit.

"[T]he Due Process Clause of the Fifth Amendment subjects the federal government to constitutional limitations that are the equivalent of those imposed on the states by the Equal Protection Clause of the Fourteenth Amendment." *Consejo De Desarrollo Economico De Mexicali, A.C. v. United States*, 482 F.3d 1157, 1170 n. 4 (9th Cir. 2007). "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "'To state a claim . . . for a violation of the Equal Protection Clause . . . a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), *quoting Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). The Equal Protection Clause also forbids unequal enforcement of valid laws where such unequal enforcement is the product of improper motive. *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *see also United States v. Bourgeois*, 964 F.2d 935 (9th Cir. 1992); *Church of Scientology of California v. C.I.R.*, 823 F.2d 1310 (9th Cir. 1987). However, the "[m]ere unequal enforcement of laws, without more, does not rise to the level of a constitutional violation." *Oyler v. Boles*, 368 U.S. 448, 456 (1962).

Considering Amor's allegations, including the claims of false information and disobeying court orders, the Court finds Amor has stated a claim for a violation of the Equal

---

[13]Amor does not specify that this occurred in 2005, but in the context of Amor's allegations, it appears to have occurred in 2005.

Protection Clause of the Fourteenth Amendment against Adams, Pike, and Vergara. The Court notes that Beaver San Angelo is entitled to absolute immunity. *See e.g. Imbler v. Pachtman*, 424 U.S. at 431 n. 34.

As to Amor's claim of retaliation, Amor's heading indicates Amor is attempting to state a claim of retaliation based on her disabled status; however, the language in the body of the TAC indicates that she is attempting to state a claim of retaliation for exercising her First Amendment rights. The Court will review the First Amendment retaliation claim. The First Amendment prohibits government officials from "abridging the freedom of speech . . . or the right to the people peaceably to assemble." U.S. Const. Amend. I. "[T]he First Amendment reflects a 'profound national commitment' to the principle that debate on public issues should be uninhibited, robust, and wide-open . . . and [the Supreme Court] ha[s] consistently commented on the central importance of protecting speech on public issues." *Boos v. Barry*, 485 U.S. 312, 318, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988). Content-based restrictions on speech in public forums are prohibited unless the restrictions are the least restrictive method of furthering a compelling government interest. *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 571 (9th Cir. 1984).

The First Amendment prohibits government officials from "abridging the freedom of speech . . . or the right to the people peaceably to assemble." U.S. Const. amend. I. "[T]he First Amendment reflects a 'profound national commitment' to the principle that debate on public issues should be uninhibited, robust, and wide-open . . . and [the Supreme Court] ha[s] consistently commented on the central importance of protecting speech on public issues." *Boos v. Barry*, 485 U.S. 312, 318, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988). Content-based restrictions on speech in public forums are prohibited unless the restrictions are the least restrictive method of furthering a compelling government interest. *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 571 (9th Cir. 1984).

To state a claim that a government official violated his First Amendment rights, a plaintiff must allege that defendants deterred or chilled her "'political speech and such deterrence was a substantial or motivating factor in [Defendant's] conduct.'" *Menotti v. City*

*of Seattle*, 409 F.3d 1113, 1155 (9th Cir. 2005), *quoting Sloman v. Tadlock*, 21 F.3d 1462, 1460 (9th Cir. 1994). To state a claim, a plaintiff need not allege that her speech was chilled: "In making their First Amendment claim, the plaintiffs were obligated to prove only that the officials' actions would have chilled or silenced 'a person of ordinary firmness from future First Amendment activities,' not that their speech and petitioning were 'actually inhibited or suppressed,'" *White v. Lee*, 227 F.3d 1214, 1241 (9th Cir. 2000), *quoting Mendocino Environmental  Center v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999).

As the Ninth Circuit has stated, "it is clearly established federal and state law that protests or assemblies cannot be dispersed on the ground that they are unlawful unless they are violent or . . . pose a clear and present danger of imminent violence . . . or they are violating some other law in the process. *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1997). Moreover, "[t]he generally accepted way of dealing with the unlawful conduct that may be intertwined with First Amendment activity is to punish it after it occurs, rather than to prevent the First Amendment activity from occurring in order to obviate the possible unlawful conduct." *Id.*

In a non-employment context, to state a claim for First Amendment retaliation, a plaintiff must allege she was engaged in constitutionally protected activity, defendants' conduct caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and that defendants' conduct was substantially motivated against plaintiff's exercise of constitutionally protected conduct. *See e.g. Worrell v. Henry*, 219 F.3d 1197, 1212-13 (10th Cir. 2000). Amor's conclusory allegations that Defendants' conduct was in retaliation for her exercise of free speech is simply not supported by her allegations. The child was removed from her home in September 2005. *See* TAC, ¶¶ 75-77. Further, Amor alleges that, on September 16, 2005, she met with Adams and Pike. *Id.*, at ¶ 92. Adams and Pike informed her that the child would not be returned. Amor has alleged that Adams and Pike used an erroneous and unconstitutionally vague standard to withhold her child and that, "[i]mmediately thereafter," Adams and Pike encouraged and recommended the transfer of the child over state lines to Dodds. *Id.*, at, ¶ 99-100. Yet, Amor

does not allege that she spoke out about the interference with her right to parent the child and the endangerment of the child as a result of the state action until November 2005. Amor has not set forth any basis to support an allegation that Defendants were substantially motivated against Amor's exercise of constitutionally protected conduct.

Amor also alleges that all State Defendants, all City Defendants, the County of Pima by and through its Superior Courts, Officers, and Indigent Defense Services, and Rohr conspired against her. To state a 42 U.S.C. § 1985(3) conspiracy claim to interfere with civil rights, "a plaintiff must allege []: (1) a conspiracy; (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in the furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992); *see also Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000). An essential requirement for a § 1985(3) claim is that there must be some racial or other class-based "invidious discriminatory animus" for the conspiracy. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), *quoting Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

In *Breckenridge*, the Supreme Court "not only precluded economic or commercial classifications, but suggested that most political classifications are not covered [by § 1985(3)] either." 2 State and Local Government Civil Rights Liability § 2:3; *see also Sever*, 978 F.2d 1529, 1536-38 (9th Cir. 1992) ("individuals who wish to petition the government" are not protected class). Amor has alleged that there is a class-based invidious discriminatory animus (persons perceived as disabled) for the conspiracy sufficient to state a claim. The Court finds Amor has stated a claim for conspiracy against Adams, Pike, and Vergara. The Court notes that Beaver San Angelo is entitled to absolute immunity. *See e.g. Imbler v. Pachtman*, 424 U.S. at 431 n. 34. The Court further notes that Baker and Wells responded to a request to assist and Amor has not alleged any facts to support an allegation that they

acted with the purpose of denying a person equal privileges and immunities. Additionally, Rohr cannot be said to be fairly treated as that of the State itself and her conduct was not that of a traditional state actor. *See also Miranda v. Clark County, Nevada*, 319 F.3d 465 (9th Cir. 2003) (even if employed by government agency, if attorney is engaged in traditional lawyer role, lawyer is not state actor for § 1983 purposes).

XIII. *County IX – Breach of Fiduciary Duty and Duty of Care; Duty of Care*

Amor asserts that all City Defendants, the State of Arizona, DES, Hanley, Downing, Adams, Pike, Vergara, Sifuentes, Beaver San Angelo, Goodsite, Pennsylvania Defendants, York County Defendants, the County of Pima by and through its Superior Courts, Officers, and Doe Defendants breached a fiduciary duty and duty of care.

The Court of Appeals of Arizona has stated:

> Constructive fraud is "a breach of legal or equitable duty which, without regard to moral guilt or intent of the person charged, the law declares fraudulent because the breach tends to deceive others, violates public or private confidences, or injures public interests." *Lasley v. Helms*, 179 Ariz. 589, 591, 880 P.2d 1135, 1137 (App. 1994). While it does not require a showing of intent to deceive or dishonesty of purpose, it does require a fiduciary or confidential relationship. *Id*. at 592, 880 P.2d at 1138. Most importantly for our purposes, the breach of duty by the person in the confidential or fiduciary relationship must induce justifiable reliance by the other to his detriment. 37 Am.Jur.2d *Fraud and Deceit* § 9 (2001); *Assilzadeh v. Cal. Fed. Bank*, 82 Cal.App.4th 399, 98 Cal.Rptr.2d 176, 187 (2000).

*Dawson v. Withycombe*, 216 Ariz. 84, 108, 163 P.3d 1034, 1058 (App. 2007). "A fiduciary relationship has been described as 'something approximating business agency, professional relationship, or family tie impelling or inducing the trusting party to relax the care and vigilance he would ordinarily exercise.'" *Taeger v. Catholic Family and Community Services*, 196 Ariz. 285, 290, 995 P.2d 721, 726 (App. 1999), *citing In re McDonnell's Estate*, 65 Ariz. 248, 253-53, 179 P.2d 238, 241 (1947), *quoting* 37 C.J.S. Fraud, § 2(2), pp. 213-14).

In *Taeger*, the court set forth definitions of a confidential relationship:

The *McDonnell* court defined a confidential relationship as follows:

> * * * a confidential relation * * * is a relation of parties in which one is bound to act for the benefit of the other and can take no advantage to himself from his

- 22 -

acts relating to the interest of the other * * * it is denied that * * * mere confidence or implicit faith in another's honesty and integrity is sufficient to constitute a fiduciary or confidential relationship. So too, mere friendly relations are insufficient for this purpose.

*Id.* at 253, 179 P.2d at 241(quoting 37 C.J.S. Fraud, § 2(2), pp. 213-14). The Arizona Supreme Court further elaborated on confidential and fiduciary relationships in *Condos v. Felder*, 92 Ariz. 366, 377 P.2d 305 (1962):

There is no uniform practice among the courts in their use of the phrases "fiduciary relation" and "confidential relation." In many cases, however, the latter phrase * * * [does] not [fall] into any well-defined category of the law. The relations of trustee and cestui, executor or administrator and creditors, next of kin or legatees, guardian and ward, principal and agent, attorney and client, corporate director and corporation, and the like are easily thrown into distinct subdivisions of the law. The have distinctive names. The term "fiduciary" might well be reserved for such relations.

But there are other cases where there is just as great intimacy, disclosure of secrets, intrusting of power, and superiority of position in the case of the representative, but where the law has no special designation for the position of the parties. It cannot be called trust or executorship, and yet it is so similar in its creation and operation that it should have like results.

*Id.* at 371, 377 P.2d 308 (quoting *3 Bogert on Trusts and Trustees*, Pt. 1, § 482 (1946). *In re Guardianship of Chandos*, 18 Ariz.App. 583, 585, 504 P.2d 524, 526 (1972) (quoting 15A C.J.S. Confidential, p. 352), offered another definition of confidential relationship as one arising

by reason of kinship between the parties, or professional, business, or social relations that would reasonably lead an ordinarily prudent person in the management of his business affairs to repose that degree of confidence in another which largely results in the substitution of that other's will for his in the material matters involved in the transaction; or where the parties occupy relations, whether legal, natural, or conventional in their origin, in which confidence is naturally inspired, or, in fact, reasonably exists.

Whether a confidential relationship exists is a question of fact. *Rhoads v. Harvey Publications, Inc.*, 145 Ariz. 142, 148, 700 P.2d 840, 846 (App. 1984). However, '[w]hen the evidence is insufficient to support a verdict, the trial court has a duty to decide the issue [as a matter of law]." *Id.* (citations omitted).

*Taeger*, 196 Ariz. at 290.

A patient has a fiduciary relationship with his or her doctor. *See e.g., Gonzales v. Palo Verde Mental Health Services*, 162 Ariz. 387, 783 P.2d 833 (App. 1989). As the parent with custodial authority of the child at the time of treatment by Goodsite, the Court finds, for purposes of this Order, Amor had a fiduciary relationship with Goodsite. The Court finds Amor has stated a claim against Goodsite for a breach of fiduciary duty.

- 23 -

In some situations, a social worker may have a fiduciary relationship with a client. *See e.g., Taeger*, 196 Ariz. at 292, 995 P.2d at 728 (adoption agency social workers have fiduciary relationship with client); *Hector M. v. Commissioner of Social Services*, 102 Misc.2d 676, 425 N.Y.S.2d 199 (N.Y.Fam.Ct. 1980) (social worker in context of surrender agreement does not have a per se fiduciary relationship with client); *Horak v. Biris*, 130 Ill.App.3d 140, 85 Ill.Dec. 599, 474 N.E.2d 13 (Ill.App. 2 Dist. 1985) (where social worker counseled husband and wife while having affair with wife, violation of trust constituted a breach of a fiduciary relationship).

The Court has not found any Arizona authority supporting an assertion that any named Defendant, other than Goodsite, had a fiduciary relationship with Amor. *See e.g,, Purday v. Fleming*, 655 N.W.2d 424 (S.D. 2002) (state social workers did not have fiduciary relationship with mother – mother knew information given to social workers would not be kept confidential and social workers' primary relationship was with the state); *Karen L. v. State Dept. of Health and Social Services*, 953 P.2d 871, 874-75 (Ala. 1998) (state social workers did not have fiduciary relationship with a mother and no duty of care). Indeed, "[n]o confidential or fiduciary relationship exists between a public official in a transaction in his or her individual capacity and another, although there is a fiduciary relationship between the official and the government unit he or she serves." 37 Am.Jur.2d *Fraud and Deceit* § 34 (2008). The Court finds Amor has failed to state any facts that would support a fiduciary relationship and, therefore, she has failed to state a claim on which relief can be granted against any named Defendants except Goodsite.

However, a claim for failure to exercise professional judgment in the placement and monitoring of a child in state foster care is viable. *Weatherford v. State*, 203, Ariz. 313, 54 P.3d 342 (App. 2002), *vacated in part on other grounds*; *see also Weatherford ex rel. Michael L. v. State*, 206 Ariz. 526, 531, 81 P.3d 320, 322 (2003). Nonetheless, Amor has not initiated this action as guardian ad litem for the child. Furthermore, she has not alleged any facts establishing that she has the "right to litigate as [the child's] next friend." *Elk Grove*

*Unified School Dist. v. Newdow*, 542 U.S. 1, 15, 124 S.Ct. 2301, 2311, 159 L.Ed.2d 98 (2004). The Court finds Amor has failed to state a claim on which relief can be granted.

As to Amor's claim of state-created danger, the Court previously advised Amor that the Ninth Circuit has not addressed whether such a claim is viable. Other courts, however, have evaluated such claim under a Fourteenth Amendment substantive due process standard. *See e.g., Nicini v. Morra*, 212 F.3d 798 (3rd Cir. 2000) *Lintz v. Skipski*, 25 F.3d 304 (9th Cir. 1994). In addition to advising Amor that allegations of harm while the child was in the custody were needed to state a claim, *see e.g., Philadelphia Police and Fire Ass'n for Handicapped Children, Inc. v. City of Philadelphia*, 874 F.2d 156 (3rd Cir. 1989) (no liability while child was in father's care), the Court also advised Amor that she had failed to allege any basis for her to bring the claim, rather than the child. Amor has alleged that Arizona establishes civil remedies for heinous acts referring to A.R.S. § 12-511 and recognizes the tort of loss of consortium. However, the statute refers to circumstances where a defendant has been charged by a criminal complaint or indictment and when the statute of limitations accrue. Indeed, it defines a civil cause of action to include a civil claim that a victim "could have brought." A.R.S. § 12-511 does not state that it provides an independent source for a cause of action. Further, a state-created danger claim is based on the Fourteenth Amendment, not state law. The Court finds Amor has failed to state a claim for state-created danger on which relief can be granted.

## XIV. *Count X – Intentional Infliction of Emotional Distress and Loss of Consortium*

Amor asserts that all Defendants have intentionally inflicted emotional distress and mental aguish. She further asserts a claim of loss of consortium against all defendants. The Court will discuss the claims against Dodds separately in section XVIII.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) the conduct of defendant was "extreme" and "outrageous," (2) defendant intended to cause emotional distress or recklessly disregarded the near certainty that such conduct would result from his conduct, and (3) severe emotional distress did occur as a result of defendant's

conduct. *Citizen Publishing Co. v. Miller*, 210 Ariz. 513, 517, 115 P.3d 107, 111 (2005); *Wells Fargo Bank v. Arizona Laborers, Teamsters, and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P.3d 12 (2002) (discussing difference between negligent and intentional torts). The acts must be "'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Mintz v. Bell Atlantic Systems Leasing International, Inc.*, 183 Ariz. 550, 554, 905 P.3d 559, 563 (App. 1995), *quotation omitted*. Further, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct. *Ford v. Revlon*, 153 Ariz. 38, 43, 734 P.2d 580 (1987).

It is not clear if, in Arizona, a claim for intentional infliction of emotional distress based on the removal of a child and/or custody proceedings would adequately state extreme and outrageous conduct, such that would be regarded as atrocious and utterly intolerable in a civilized society. Indeed, any actions to remove a child will cause distress. *See Karen L.*, 953 P.2d at 876 (where parent has right to counsel in removal proceedings, not foreseeable that emotional distress will result; any litigation to remove child will cause some distress; that "does not mean that the distress should be actionable"); see also *LaBelle v. St. Lawrence County*, 85 A.D.2d 759, 445 N.Y.S.2d 275 (N.Y.A.D. 1981) (as a matter of policy, intentional infliction of emotional harm could not arise from police and social worker participating in removal of unattended children); *Dalmer v. State*, 174 Vt. 157, 811 A.2d 1214 (2002) (violation of time requirements for court proceedings or return of child under Juvenile Procedures Act did not, alone, constitute outrageous conduct); *Spurrell v. Bloch*, 40 Wash.App. 854, 863 701 P.2d 529, 536 (1985) (sleepless night, tears, loss of appetite, and anxiety is not "distress above that level which is a fact of life"). However, where a parent moved the child out of the country in violations of a custody order, a claim for intentional infliction of emotional distress was permitted against the grandparents for assisting the parents. *See Pankratz v. Willis*, 155 Ariz. 8, 744 P.2d 1182 (App. 1987).

Amor has alleged that she was in a state of anguish and shock on September 29, 2005, when she went to the juvenile court. Amor further asserts that her son suffered extreme emotional and mental trauma while in temporary state custody. Additionally, Amor asserts that she was in extreme distress for her child as he suffered trauma and injury in state custody. The Court finds Amor has failed to allege severe emotional distress did occur as a result of Defendants' conduct. Rather, Amor has made conclusory allegations that fail "to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1964-65. The Court finds Amor has failed to state a claim upon which relief can be granted.

As to Amor's claim of loss of consortium, the Supreme Court of Arizona has defined a loss of consortium "as a loss of capacity to exchange love, affection, society, companionship, comfort, care and moral support." *Pierce v. Cases Adobes Baptist Church*, 162 Ariz. 269, 272, 782 P.2d 1162, 1165 (1989).[14] The Court held that a parent:

> may maintain a cause of action for loss of their child's consortium when the child suffers a severe, permanent, and disabling injury that substantially interferes with the child's capacity to interact with his parents in a normally gratifying way. . . Whether a significant interference with the normal relationship between parent and child has been met is a question of law for the judge to determine. Once the judge finds that the child's injuries are sufficiently severe to warrant a cause of action for loss of consortium, the trier of fact determines the question of recovery or the amount recoverable based on the degree of that interference.

*Id*. However, the Court has not found any Arizona authority for a loss of consortium claim that is not based on the death or injury of the child. *See also* 7 Cause of Action 2d 319 (2008) (plaintiff must show that "the defendant is legally responsible for the injury or death of the plaintiff's child"). The Court finds Amor has failed to state a claim for loss of consortium upon which relief can be granted.

### XV. *Count XI – Fraud and Common Law Deceit to Deny Equal Protection*

Amor asserts that the Preschool, all State Defendants, Dodds, Gilmore, and Rohr have committed fraud and common law deceit to deny equal protection and access to post-

---

[14]In Arizona, loss of consortium is a derivative claim and requires an underlying cause of action. *See e.g., Lohmeier v. Hammer*, 214 Ariz. 57, 148 P.3d 101 (App. 2006).

judgment proceedings.[15]  Amor alleges that Adams and Pike presented a verified affidavit, containing false allegations, that caused non-defendant Turner and the judge to proceed to prosecute. Amor asserts that the allegations were based on a report that allegedly contained the third-party hearsay of the Preschool and Goodsite. Amor asserts that Adams and Pike, with deliberate and reckless disregard for Amor's civil rights and fundamental liberties, misrepresented other Defendants' statements and records to obstruct justice, abuse process, and maliciously prosecute Amor on false and fraudulent allegations.

Amor further alleges that the contract lodged with the Superior Court prohibited Dodds or any member of his family to have any unsupervised visitation and that Dodds had relinquished any legal rights to plan or care for the child. Amor alleges that Beaver San Angelo encouraged the juvenile court to dismiss the Dodds' case plan, i.e., contract, and that DES and Pima County Court officers permitted Dodds to provide his own criminal clearance. Amor also alleges that Beaver San Angelo urged the juvenile court to release the child out-of-state without the ICPC process being completed. Amor also alleges that Rohr refused to submit Amor's motions and evidence to the juvenile court.

Amor also alleges that Dodds used the child to gain control of the minor's assets, gain control of expected inheritances, intercept Amor's federal social security benefits, gain tax advantages, and breached the domestic partnership agreement.

To state a claim for fraud, Amor must allege "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury." *Enyart v. Transamerica Ins.Co.*, 195 Ariz. 71, 77, 985 P.2d 556, 562 (App. 1998). The only allegation that Amor *relied upon a material representation* was that Dodds breached the domestic partnership agreement.

---

[15]Included in the allegations referred to for this claim are Amor's allegations regarding the garnishment of child support from her federal social security benefits. Those allegations are addressed separately in section XIX.

However, Amor has not alleged or stated any facts that, at the time of the making of the agreement, that the contents were false . . . . i.e., Amor has not alleged that Dodds knew of any falsity. Furthermore, Amor has not alleged any other Defendant told her a material falsity *upon which Amor relied*, The Court finds Amor has failed to state a claim of fraud upon which relief can be granted.

While some states recognize a separate tort action for deceit, *see e.g., MFA Mut. Ins. Co. v. Keller*, 274 Ark. 281, 623 S.W.2d 841 (Ark. 1981), it appears that Arizona does not recognize, separate from the torts of fraud or misrepresentation, the tort of deceit. Rather, the Arizona cases that discuss "deceit"involve the tort of fraud or misrepresentation of fact. *See e.g., Rhoads v. Harvey Publications, Inc.*, 131 Ariz. 267, 640 P.2d 198 (App. 1981) (misrepresentation as to a matter of law will not ordinarily support an action for fraud or deceit); *Johnson v. Kerr-McGee Oil Industries, Inc.*, 129 Ariz. 393, 631 P.2 548 (App. 1981) (in discussing fraud count, court refers to allegations of deceit); *Brunell Leasing Corp. v. Wilkins*, 11 Ariz.App. 165, 462 P.2d 858 (1969) (refers to plaintiff's action in fraud and deceit); *Thomas v. Newcomb*, 26 Ariz. 47, 221 P. 226 (1923) (in appropriate circumstances, plaintiff may sue for tort of fraud and deceit); *see also QC Const. Products, LLC v. Cohill's Bldg.*, 423 F.Supp.2d 1008, 1016 n. 6 (D.Ariz. 2006) (referring to "fraud and deceit" as a tort claim); *Coleman v. Watts*, 87 F.Supp.2d 944, 951 (D.Ariz. 1998) (liability in deceit for pecuniary loss caused by justifiable reliance upon misrepresentation). The Court finds, therefore, that Amor has failed to state a claim for common law deceit upon which relief can be granted.

XVI. *Count XII – False Malicious Reporting and Fraud*

Amor asserts the Preschool committed false malicious reporting and fraud. Amor alleges that the child received a head injury and a cut on his forehead while at the Preschool on September 17, 2004. Amor further alleges that, approximately two to three weeks later, the child suffered another head injury and bruises on his forehead. Amor alleges that Kathy Lester ("Lester") refused to provide a report regarding this incident. Amor also alleges that,

in or around June 2005, she questioned the Preschool personnel about a black and blue mark, which resembled a hand print, on the child's thigh. The Preschool employees denied knowledge of the source and refused to provide a report regarding this incident. Amor assert that this injury was later included as a false allegation against her by DES, Adams, and Pike. Amor further alleges that, in the summer of 2005, the Preschool told Amor that an irritation to child's inner mouth cheek had happened while the child was playing; Amor asserts that DES, Adams, and Pike falsely alleged she was the cause of this injury.

Amor asserts that during July through September 2005, the child exhibited increasingly fearful behavior (e.g., refusing to get out of the vehicle) regarding the Preschool. Amor advised the Preschool that she would be removing the child from their care at the end of September. Amor requested his records, but Lester and Janice Redding ("Redding") refused to provide them. The child was removed from her home before Amor removed the child from the Preschool.

As previously stated, it is not clear if an action for false malicious reporting is available in Arizona. However, for purposes of this Order, the Court finds such a claim is available. However, Amor has not alleged who from the Preschool made any alleged false reports. The Court finds Amor has failed to state a claim for false reporting against Lester or Redding. Nonetheless, Amor has alleged that injuries suffered by the child at the Preschool were later alleged against her. Amor further alleges that the false or misleading statements were known to be untrue and were made to conceal the child abuse and neglect by Preschool Defendants. Further, employer liability may be available in Arizona. *See generally Miller v. Mason-McDuffie Co. of Southern California*, 153 Ariz. 58, 739 P.2d 806 (1987). The Court finds Amor has stated a claim of false reporting against the Preschool.

As to Amor's claim of fraud against the Preschool, the Court has previously set out the required allegations of a fraud claim. *See Bryant*, 195 Ariz. at 77, 985 P.2d at 562 (plaintiff must alleged a representation, its falsity, its materiality, the speaker's knowledge of its falsity or ignorance of its truth, the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated, the hearer's ignorance of its falsity, the

hearer's reliance on its truth, the right to rely on it, his consequent and proximate injury). Amor has not alleged that the hearers (presumably DES, Adams, and/or Pike) suffered an injury. The Court finds Amor has failed to state a claim for fraud against the Preschool upon which relief can be granted.

## XVII. *Count XIII - Negligent Hiring Training, and Supervision*

Amor alleges that the State of Arizona, DES, Hanley, DCYF, Downing, the County of Pima, the City of Tucson and its City Council, and TPD are liable for negligent hiring, training and supervision. Amor has also listed the County of York in and of the State of Pennsylvania as a Defendant.

In order to impose liability on the government entities and/or supervisors, Amor must alleged that the government entities and/or the supervisors "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir.1991), cert. denied, 112 S.Ct. 972 (1992) (*quotations omitted*); *see also Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989) (a supervisor may be liable under § 1983 if he "knew of the violations and failed to act to prevent them.").

However, Amor has not alleged the existence of any policy that was expressly sanctioned, enacted, or authorized by the government entities or named supervisors that led to an alleged injury. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Ulrich v. City and County of San Francisco*, 308 F.3d 968 (9th Cir. 2002). Amor's allegations of the "standard procedure" in the juvenile courts, unconstitutional polices or customs in the superior and juvenile courts, and the common practice of TPD are conclusory and fail "to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1964-65. Moreover, Amor has not alleged that any alleged constitutional violation is the result of inadequate training such that deliberate indifference is shown. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (inadequacy must be so likely to result in the violation of constitutional rights that the

policymaker can reasonably be said to be indifferent to the need). Indeed, mere allegations based solely on a plaintiff's own experience are insufficient to establish liability of a supervisor. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

The Court finds dismissal of the State of Arizona, DES, Hanley, DCYF, Downing, the County of Pima, the City of Tucson and its City Council, the City of Tucson Police Department, and the County of York in and of the State of Pennsylvania as a Defendant is appropriate. Further, the Court finds Amor has failed to set forth any claims of supervisory liability, other than those as set out in sections V and IX against Adams and Pike.

XVIII. *Count XIV – Torts*

Amor alleges various state torts against Dodds. Amor alleges ongoing acts of domestic violence, interstate stalking, threats of kidnapping, threats of physical and other harms, intentional infliction of emotional distress, unlawful receipt and use of monies, interruption of social security direct benefit to cause irreparable financial and legal harm, unhonored Domestic Partnership Agreement, intentional breach of contract, intentional familial interference, fraud, and loss of consortium.[16] The Court notes that, for some of the allegations against Dodds, Amor has not alleged the dates or locations.[17]

---

[16]The Court notes that "'[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Elk Grove Unified School Dist.*, 542 U.S. at 12, 124 S.Ct. at 2309, *citation omitted*. Indeed, the federal courts are divested "of power to issue divorce, alimony, and child custody decrees." *Id.*

[17]This Order does not address possible venue and statute of limitations defenses.

A. *Domestic Violence and Threats*

Amor does not specify which tort(s) she is attempting to allege in her claims of domestic violence. As to Amor's claims of harassment and stalking, the Court considers that while "it is conceivable that a court could create a separate civil action for stalking by extending the common law, courts have been reluctant to do so. The tort of harassment or stalking has been a statutory creation, either by specific enactment of a civil action or by inference from the criminal statute." 32 Causes of Action 2d 487. Moreover, the "recognition of a tort of stalking is generally a state matter." *Id.* Arizona has not enacted a statute creating a civil cause of action for stalking. *Compare* Cal.Civ.Code § 1708.7; Mich.Stat.Ann. § 600.2954; Wyo.Stat.Ann. §§ 6-2-506(a) and (b); Or.Rev.Stat. § 30.866; Tex.Civ.Code §§ 85.001 to 85.006; R.I. Gen. Laws § 9-1-2.1; Va. Code Ann. § 18.01-42.3. Moreover, no Arizona case has recognized a civil cause of action for stalking. *Compare Stockdale v. Baba*, 153 OhioApp.3d 712, 795 N.E.d2d 727 (10th Dist. 2003 (Ohio appellate court affirmed verdict for common law tort of stalking); *Alison C. v. Westcott*, 343 Ill.App.3d 648, 798 N.E.2d 813 (2nd Dist. 2003) (Domestic Violence Act provides a civil remedy for stalking under certain circumstances). Indeed, some courts have rejected claims that a criminal stalking statute implies a civil cause of action. *See Troncalli v. Jones*, 237 Ga.App. 10, 514 S.E.2d 478 (1999); *Sullivan v. Borough of Hellertown*, 2003 WL 21664848 (E.D.Pa. 2003).

Arizona makes the harassment of another person a misdemeanor, A.R.S. § 13-2921. That statute includes a cross reference to A.R.S. § 12-511, which discusses when the statute of limitations for civil actions accrue and refers to civil claims that a victim "could have brought." However, "cross references are supplied for the purpose of convenient reference and do not constitute part of the law." A.R.S. § 1-212. A.R.S. § 12-511 does not state that it provides a source for a civil cause of action. The Court finds there is no basis to conclude that Arizona would recognize a tort for harassment or stalking.

To state a claim for assault, Amor must allege that Dodds acted with intent "to cause a harmful or offensive contact with [Amor] or an imminent apprehension of such a contact

[and Amor was] thereby put in such apprehension." Restatement 2nd Torts § 21. However, where there is no apparent ability to carry through on the alleged threat, dismissal is appropriate. *Venerias v. Johnson*, 127 Ariz. 496, 622 P.2d 55 (App. 1980), *overruled on other grounds*. Amor alleges that Dodds, over a period of five to six years committed continuous acts of domestic violence against Amor and her child (e.g., threatened to use connections to have Amor appear mentally unstable, physical harm, separate Amor from the child). Amor also alleges that from 2003 through 2005 Dodds harassed and threatened her (e.g., kidnapping, financial and legal ruin, interception of social security benefits, physical harm). The Court finds these vague allegations (e.g., no date or location) fail to set forth a set of facts that serves to put Dodds on notice as to the nature and basis of the claims.

Amor alleges that, in March 2003, Dodds punched the wall, screamed obscenities, and threatened Amor and the child with physical harm. The Court finds Amor has stated a claim for assault against Dodds on which relief can be granted.

Amor further alleges that during March and April of 2004, Dodds threatened to drop a bomb on Amor during a telephone conversation. Thereafter, Amor and the child were the subject of stalking and surveillance – Amor caught private investigator Stanley Moose with a camera outside her window in Oro Valley. Amor appears to be implying that Dodds' brother arranged for the surveillance. The Court finds Amor has failed to state a claim for which relief can be granted against Dodds.

Amor asserts that during the period of May through August of 2005, the stalking increased and was of a more alarming nature and during the period of June or July of 2005, Dodds issued serious threats against Amor and the child. The Court finds these allegations are conclusory and fails to state a claim on which relief can be granted.

Amor alleges that around the third week of July 2005, she received a letter from Dodds that threatened "social workers, judges, and lawyers." TAC at ¶ 266. Amor appears to be alleging that the Dodds would use social workers, judges, and lawyers to harm her. The Court finds this allegation is vague and Amor has failed to state a claim on which relief can be granted.

- 34 -

B. *Intentional Infliction of Emotional Distress*

As previously stated, to state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) the conduct of defendant was "extreme" and "outrageous," (2) defendant intended to cause emotional distress or recklessly disregarded the near certainty that such conduct would result from his conduct, and (3) severe emotional distress did occur as a result of defendant's conduct. *Citizen Publishing Co.*, 210 Ariz. at 517, 115 P.3d at 111. To the extent Amor is alleging an intentional infliction of emotional distress based on Dodds' actions in obtaining custody of the child, the *Rooker-Feldman* Doctrine precludes a district court from reviewing state court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483, 103 S.Ct. 1303, 1316, 75 L.Ed.2d 206 (1983); *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 1527, 161 L.Ed.2d 454 (2005). This Court's jurisdiction to hear the alleged cause of action depends on whether Amor's claim is "inextricably intertwined" with the state court's ruling in a state court action." *Dubinka v. Judges of the Superior Court*, 12 F.3d 218, 221 (9th Cir. 1994), *citation omitted*. This Court lack subject matter jurisdiction if the relief requested requires "'a mere revision of the errors and irregularities, or of the legality and correctness' of the state court judgment, not the 'investigation of a new case arising upon new facts.'" *MacKay v. Pfeil*, 827 F.2d 540, 545 (9th Cir. 1987).

To the extent that Amor is alleging intentional infliction of emotional distress based on Dodds' conduct in the state court proceedings, it appears that Amor is requesting this Court to review the legality of the state court rulings. This requires a review of the state court's decision, and a potential revision of the state court's order. Amor's claim is "inextricably intertwined" with the state court's ruling and this Court does not have subject matter jurisdiction over this claim. The Court finds dismissal of this claim is appropriate.

The Court also considers this claim based on the alleged domestic violence, harassment, and stalking. Amor has alleged that she was in a state of anguish and shock on September 29, 2005, when she went to the juvenile court. Additionally, Amor asserts that

she was in extreme distress for her child as he suffered trauma and injury in state custody. The Court finds Amor has failed to allege severe emotional distress occured as a result of Defendants' conduct. Amor's conclusory allegations fail "to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1964-65. The Court finds Amor has failed to state a claim upon which relief can be granted.

C. *Unlawful Receipt and Use of Monies*

This allegations appears to be based on Amor's claims that Dodds received gifts for the child in excess of gift tax limits, Dodds claimed the child on tax returns, and/or Dodds received money from Blue Cross/Blue Shield. The Court cannot ascertain on what basis Amor is claiming a tort action against Dodds. The Court finds Amor has failed to state a claim on which relief can be granted.

D. *Interruption of Social Security Direct Benefit*

Again, it is not clear what tort Amor is attempting to allege by asserting that Dodds caused the interruption of her social security benefits. However, the *Rooker-Feldman* Doctrine precludes a district court from reviewing state court judgments. This Court's jurisdiction to hear the alleged cause of action depends on whether Amor's claim is "inextricably intertwined" with the state court's ruling in a state court action." *Dubinka*, 12 F.3d at 221. Amor requests this Court to review the legality of the interruption of funds from her federal benefits for child support. This requires a review of the state court's decision, and a potential revision of the state court's order that directs child support be withheld from Amor's federal benefits. Amor's claim is "inextricably intertwined" with the state court's ruling and this Court does not have subject matter jurisdiction over this claim. The Court finds dismissal of this claim is appropriate.

E. *Unhonored Domestic Partnership Agreement and Intentional Breach of Contract*

      To state a claim for breach of contract, a plaintiff must allege an agreement, the right to seek relief, and a breach by a defendant. *Commercial Cornice & Millwork, Inc. v. Camel Construction Services Corp.*, 154 Ariz. 34, 739 P.2d 1351 (App. 1987). However, the *Rooker-Feldman* Doctrine precludes a district court from reviewing state court judgments. Amor requests this Court to review the legality of a change in the custody decisions for the child. This requires a review of the state court's decision, and a potential revision of the state court's order. Amor's breach of contract claim is "inextricably intertwined" with the state court's ruling and this Court does not have subject matter jurisdiction over this claim. The Court finds dismissal of this claim is appropriate.

F. *Intentional Familial Interference*

      While Arizona has recognized an intentional infliction of emotional distress claim where grandparents were alleged to have assisted the "child stealing by a divorced parent[,]" *Pankratz v. Willis*, 155 Ariz. at 15, 744 P.2d at 1189, the Court has not found any Arizona authority that supports a claim for familial interference based upon a change in a custody order. Moreover, the *Rooker-Feldman* Doctrine precludes a district court from reviewing state court judgments. Amor requests this Court to review the legality of a change in the custody decisions for the child. This requires a review of the state court's decision, and a potential revision of the state court's order. Amor's familial interference claim is "inextricably intertwined" with the state court's ruling and this Court does not have subject matter jurisdiction over this claim. The Court finds dismissal of this claim is appropriate.

G. *Fraud*

      It is not clear on what basis Amor alleges a claim of fraud against Dodds. To the extent that Amor is seeking to state a claim based on the breached domestic partnership agreement, as previously stated in section XV, the Court finds Amor has not stated a claim on which relief can be granted.

H. *Loss of Consortium*

As previously stated the Court has not found any Arizona authority for a loss of consortium claim that is not based on the death or injury of the child. *See* 7 Cause of Action 2d 319 (2008). Additionally, the *Rooker-Feldman* Doctrine precludes a district court from reviewing state court judgments. Amor requests this Court to review the legality of a change in the custody decisions of the child. This requires a review of the state court's decision, and a potential revision of the state court's order. Amor's loss of consortium claim is "inextricably intertwined" with the state court's ruling and this Court does not have subject matter jurisdiction over this claim. The Court finds Amor has failed to state a claim for loss of consortium upon which relief can be granted.

XIX. *Count XV – Wrongful Takings of Federal Social Security Benefit*

Amor alleged that the State of Arizona through DES and the Office of the Attorney General, Pima County by and through the Superior Court and Indigent Defense Counsel, Dodds, Gilmore, and Rohr have wrongfully taken her federal social security benefits in violation of the takings clause and committed fraud. Amor alleges that her federal disability benefits have been garnished for child support without any notice or hearing.

The Fifth Amendment "prevents governments from taking property without just compensation" while the Fourteenth Amendment "prevents states from taking property without due process of law." *Garneau v. City of Seattle*, 147 F.3d 802, 817 (9th Cir. 1998), *concurring*. However, the *Rooker-Feldman* Doctrine precludes a district court from reviewing state court judgments. This Court's jurisdiction to hear the alleged constitutional challenge depends on whether Amor's constitutional claim is "inextricably intertwined" with the state court's ruling in a state court action." *Dubinka v. Judges of the Superior Court*, 12 F.3d at 221. Amor requests this Court to review the legality of the removal of funds from her federal benefits for child support. This requires a review of the state court's decision, and a potential revision of the state court's order that directs child support be withheld from Amor's federal benefits. Amor's takings claim is "inextricably intertwined" with the state

court's ruling and this Court does not have subject matter jurisdiction over this claim. The Court finds dismissal of this claim is appropriate.

## XX. *Claims Against Licensed Professionals*

The Court has found that Amor has stated claims against licensed professionals Goodsite, Coughlin, and Rohr. However, the Arizona Legislature has stated:

> If a claim against a licensed professional is asserted in a civil action, the claimant or the claimant's attorney shall certify in a written statement that is filed and served with the claim whether or not expert opinion testimony is necessary to prove the licensed professional's standard of care or liability for the claim.

A.R.S. § 12-2602(A). Amor has not included such a statement with the TAC. Amor will be directed to file such a statement within ten (10) days of this Order and serve a copy of the statement with the TAC.

## XXI. *Claims For Which An Answer Will be Required*

Liberally construed, the Court has found that Amor's TAC has stated the following claims:

| | |
|---|---|
| Count I: | U.S. Const. Fourth Amendment, U.S. Const. Fourteenth Amendment, Ariz. Const. Art. 2, § 8 (wrongful seizure/removal) claims against Baker, Wells, Sifuentes, Adams, and Pike. |
| Count II: | U.S. Const. Fourth Amendment (excessive force) claim against Baker. |
| Count III: | Medical Malpractice claim against Goodsite. |
| Count IV: | False Reporting claim against Goodsite. |
| Count V: | U.S. Const. Fourteenth Amendment, Ariz. Const. Art. 2, § 4 (substantive due process) claims against Baker, Wells, Sifuentes, Adams, and Pike. |
| Count VI: | U.S. Const. First Amendment and U.S. Const. Fourteenth Amendment (familial association) claims against Adams, Pike, and Vergara. |
| Count VII: | Legal Malpractice claims against Coughlin and Rohr. |

| | |
|---|---|
| Count VIII: | U.S. Const. Fourteenth Amendment (equal protection) claim against Adams, Pike, and Vergara; 42 U.S.C. § 1985(3) Conspiracy claim against Adams, Pike and Vergara. |
| Count IX: | Breach of Fiduciary Care claim against Goodsite. |
| Count XII: | False Reporting claim against the Preschool. |
| Count XIII: | Supervisory Liability claims against Adams and Pike as set forth in Counts I and V. |
| Count XIV: | Assault and Intentional Infliction of Emotional Distress claims against Dodds. |

The Court will require these Defendants to answer the allegations in the respective counts.[18]

## XXII. *Pending Motions and Service of Third Amended Complaint*

Amor has requested that the Second and Third Amended Complaints be sealed. However, "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Courts are to weigh "the interests advanced by te parties in light of the public interest and the duty of the courts." *Id*. at 598. The Ninth Circuit has determined that, in determining whether the public right of access should be restricted, a strong presumption in favor of public access exists. *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995). Further, the Ninth Circuit has stated that, in making a decision, a district court should consider all relevant factors, including:

> the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement under trade secrets . . . After taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.

---

[18]The Court notes that a defendant's request for a dismissal is "not foreclosed by the issuance of a sua sponte screening providing that the [plaintiff] has stated a claim[.]" *Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D.Cal. 2007).

*Id.*, *quoting EEOC v. Erection Co.*, 900 F.2d 168, 170 (9th Cir. 1990).

Amor's Motions to Seal request the Court to only permit the Second Amended Complaint and the TAC to be unsealed, because of sensitive, safety, and privacy issues therein, if the Court accepts the documents. The Court having determined that Amor has stated claims upon which relief can be granted, the Court finds it is not appropriate to seal the documents.

Amor also requests clarification regarding the service of documents and additional time to complete service. The Court having accepted some of Amor's claims, Amor will now be directed to effectuate service upon Defendants pursuant to Fed.R.Civ.P. 4. However, every pleading subsequent to an original complaint may be served by electronic means. Fed.R.Civ.P. 5. Because Amor is not registered as an ECF user, service must be completed by non-electronic means. L.R.Civ. 5.5(h). However, the parties and counsel are advised that submission of a document to the office of the Clerk of the Court by Amor, subsequent entry into ECF by the Clerk of the Court, and transmission of the Notice of Electronic Filing to a Registered User's e-mail address constitutes services of the hyperlinked document. *Id*. In other words, if a Defendant is represented by counsel, and is, therefore, a registered ECF User, service by Amor of any document subsequent to the Third Amended Complaint may be completed by the entry into the ECF system by the Clerk of the Court. However, hard copies of documents requested to be filed under seal must be provided to all other parties/counsel in hard copy format (unless the Court has granted permission for a filing *ex parte*).

The Court notes that Amor was previously granted *in forma pauperis* status. Further, Amor previously inquired of service by the U.S. Marshal's Office. Where an *in forma pauperis* plaintiff seeks assistance of service, the Court may direct the United States Marshal's Office to effectuate service. *See generally Boudette v. Barnette*, 923 F.2d 754 (9th Cir. 1991). The Court finds it appropriate to direct the United States Marshal's Office to serve the summons and TAC upon Defendants. Amor will be directed to complete and return

a service packet to the Clerk of Court within 20 days of the date of filing of this Order for the United States Marshal to provide service of process of the Third Amended Complaint.

Amor also seeks a temporary stay in order to address state domestic relations issues relating to the interception of social security benefits. Amor asserts that the *Rooker-Feldman* doctrine does not apply to preclude her claims in this litigation and, therefore, a stay is appropriate because resolution of the state issues would result in judicial convenience and efficiency. However, the Court has determined that the *Rooker-Feldman* doctrine does preclude some claims contained within the TAC. Resolution of those issues, therefore, will not affect this pending matter. Additionally, Amor asserts that a stay is needed to avoid juggling the legal issues in both the state matter and this matter. The Court does not find this an adequate basis to stay this matter. Further, the Court's granting Amor leave to amend and the Court's screening of Amor's pleadings has delayed this matter and the Court does not find it appropriate to grant the stay, thereby incurring additional delay.

Dodds' Motion to Extend Deadlines will be denied as moot.

## XXIII. *Notice to Amor*

Amor should again take notice that if she fails to timely comply with every provision of this Order, this action will be dismissed pursuant to Rule 41(b), Fed.R.Civ.P. *See Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir.), *cert. denied*, 506 U.S. 915 (1992) (District Court may dismiss action for failure to comply with any order of the Court).

The Ninth Circuit Court of Appeals requires the Court to provide pro se prisoners with notice of the requirements of Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure. *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). Similarly, the Ninth Circuit has required notice be provided when a motion to dismiss has been filed. *See Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003). Although the Ninth Circuit has not stated that similar notices must be provided to other pro se plaintiffs, the Court will provide Amor with these notices.

**ACCORDINGLY**, the Court **NOTIFIES** Amor as follows:

a.      When a motion to dismiss pursuant to Fed.R.Civ.P. 12(b), motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), or motion for summary judgment pursuant to Fed.R.Civ.P. 56 is filed (e.g., on the on the grounds that you failed to state a claim or that there is no material issue of factual dispute), the motion will, if granted, result in the dismissal of your case.  When a party you are suing makes a motion to dismiss or for summary judgment, and that motion is properly supported by declarations (or other sworn testimony) and/or documents, you may not simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answer to interrogatories, or documents, that contradict the facts shown in the defendant's declarations and documents and show that you have in fact exhausted your claims.  If you do not submit your own evidence in opposition, the motion to dismiss, if appropriate, may be granted and the case dismissed.

1.      The declarations or other sworn testimony setting out your specific facts must be made on personal knowledge, must set forth such facts as would be admissible as evidence, and must affirmatively show that the affiant is competent to testify regarding the matters in the declaration or other sworn testimony.

2.      If the Court determines that any of the declarations or other sworn testimony are made in bad faith, the Court may order the party employing the bad faith to pay the other party for costs associated with controverting that testimony, including the other party's attorney's fees.

3.      If you do not submit your own evidence in opposition to the motion, the moving party's evidence might be taken as truth and those claims addressed in the motion will be DISMISSED without a trial.  **IF THAT OCCURS, THERE WILL BE NO TRIAL ON THOSE CLAIMS.**

b.      **YOU SHALL FILE ANY RESPONSE TO A MOTION TO DISMISS, MOTION FOR JUDGMENT ON THE PLEADINGS, OR MOTION FOR SUMMARY JUDGMENT WITHIN THIRTY (30) DAYS FROM THE DATE THE MOTION IS**

**FILED.**[19]  If you do not respond to the motion, your failure to respond can be viewed as you agreeing to the Court granting the Motion.  *See* L.R.Civ. 7.2(i).  **IF THAT OCCURS, THOSE CLAIMS ADDRESSED IN THE MOTION TO DISMISS, MOTION FOR JUDGMENT ON THE PLEADINGS, OR MOTION FOR SUMMARY JUDGMENT WILL BE DISMISSED AND THERE WILL BE NO TRIAL ON THOSE CLAIMS.** Any reply shall be filed within fifteen (15) days from the date the response is filed.

IT IS THEREFORE ORDERED:

1.      Amor's Motion for Leave of Court to File Third Amended Complaint [Doc. # 129] is GRANTED.

2.      Amor's Motion to Seal Second Amended Complaint [Doc. # 124] is DENIED.

3.      Amor's Motion for Temporary Seal of Third Amended Complaint [Doc. # 131] is DENIED.

4.      Amor's Motion to Extend Page Limitations [Doc. # 125] is DENIED as MOOT.

5.      Amor's Motion for Clarification Sealed Service [Doc. # 127] is GRANTED.

6.      Amor's Motion for Clarification and for Extension of Time to Serve Amended Complaint [Doc. # 136] is GRANTED.

7.      Amor's Motion for Clarification & Stay [Doc. # 139] is GRANTED IN PART AND DENIED IN PART.

8.      Amor shall file a statement in compliance with A.R.S. § 12-2602(A) within ten (10) days of this Order.  Failure to comply with A.R.S. § 12-2602(A) within ten (10) days of this Order will result in dismissal of the claims against the licensed professionals.

---

[19]L.R.Civ. 12.1 and 56.1 provide for these time limits when a motion to dismiss for lack of subject matter jurisdiction or a motion for summary judgment is filed.  The Court finds it appropriate to also impose these time limits for a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) and a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

9. Defendant Dodds' Motion to Extend Deadlines, joined by Coughlin [Doc. # 132] is DENIED AS MOOT.

10. Defendants State of Arizona, State of Arizona Department of Economic Security, Beaver San Angelo, Downing, Hanley, Count of Pima by and through its Superior Courts and its Officers and Employees and its Indigent Defense Counsel, City of Tucson and its City Council by and through its Tucson Police Department, Redding, Lester, County of York in and of the State of Pennsylvania, Gilmore, G. Dodds, and J. Dodds are DISMISSED from this action.

11. Defendants Baker, Wells, Sifuentes, Adams, and Pike must answer Counts I and V, Defendant Baker must answer Count II, Defendant Goodsite must answer Counts III, IV, and IX, Defendant Adams, Pike, and Vergara must answer Counts VI and VIII, Defendants Coughlin and Rohr must answer Count VII, Defendant Preschool must answer Count XII, Defendants Adams and Pike must answer Count XIII, and Defendant Dodds must answer Count XIV.

12. The Clerk of Court must send Amor a service packet including the Third Amended Complaint, this Order, and both summons and request for waiver forms for Defendants Baker, Wells, Sifuentes, Adams, Pike, Vergara, Baker, Goodsite, Coughlin, Rohr, the Preschool, and Dodds.

13. Amor must complete and return the service packet, with the addition of the A.R.S. § 12-2602(A) written statement, to the Clerk of Court within 20 days of the date of filing of this Order. The United States Marshal will not provide service of process if Amor fails to comply with this Order.

14. A Defendant may be dismissed from this action, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, if Amor does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later. *See* Fed.R.Civ.P. 4(m).

15. The United States Marshal must retain the Summons, a copy of the Complaint, a copy of the A.R.S. § 12-2602(A) statement, and a copy of this Order for future use.

16. The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. The Marshal must immediately file requests for waivers that were returned as undeliverable and waivers of service of the summons. If a waiver of service of summons is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

> (a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

> (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) and (5) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

17. **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not Amor.**

18. Defendants must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

19. Any answer or responsive pleading must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, responsive pleading, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

DATED this 27th day of February, 2009.

_____
Cindy K. Jorgenson
United States District Judge